# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **RAYMOND SMITH,** *on behalf of the Estate of deceased Rainer Smith, on behalf of Rainer Smith, Jr.;* **and AMY RYLES**[1], *on behalf of Abigail Smith;* | |
| *Plaintiffs,* | **CIVIL ACTION NO.** **5:19-cv-00312-TES** |
| **v.** | |
| **JOHN FORD,** *et al.,* | |
| *Defendants.* | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS

Before the Court is Defendants' Partial Motion to Dismiss for Failure to State a

Claim [Doc. 2]. For the following reasons, the Court **GRANTS** Defendants' Motion as to

Plaintiffs' conspiracy claims;[2] their § 1983 claim against the City of Byron; their § 1983

claims against Officers Ford, Wynn, Farmer, and Patterson, and Captain Lavender in

---

[1] "Amy Ryles was the fiancée of Rainer Smith and the mother of Abigail Smith (child of now deceased Rainer Smith)." [Doc. 1-2 at ¶ 3].

[2] To the extent that Plaintiffs might allege a conspiracy claim (that term appears only once in the "Common Allegations" section of their Complaint), the Court **GRANTS** Defendants' Motion as to this claim. *See* [Doc. 1-2 at ¶ 21] ("Defendants conspired and worked with each other, and with other law enforcement agents, to give false but consistent information to the Georgia Bureau of Investigation regarding their conduct during the homicide of Rainer Smith, specifically including but not limited to falsely claiming they announced themselves multiple times before entering the home.")]. Plaintiffs' allegations fail to allege plausible facts regarding the necessary elements for a conspiracy claim. *See Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1260 (11th Cir. 2010). Moreover, Plaintiffs' allegations are entirely conclusory in nature with no actual factual support. *See* [Doc. 1-2 at ¶ 21].

their official capacities; and their punitive damages claim. In contrast, the Court

**DENIES** Defendants' Motion as to Plaintiffs' state-law claims against the City of Byron and Officers Ford, Wynn, Farmer, and Patterson, and Captain Lavender in their official capacities.

## FACTUAL BACKGROUND

This case arises out of the fatal shooting of Rainer Smith ("Smith"), the son of Raymond Smith,[3] by Defendants Ford, Wynn, and Farmer, all of whom are members of the City of Byron Police Department and Byron Peach County Drug Enforcement Unit. [Doc. 1-2 at ¶¶ 1–8]. Plaintiffs allege that Defendants Ford, Wynn, Farmer, Patterson, and Lavender ("the Officers"), on or about December 12, 2016, at 2 AM, arrived in multiple vehicles, cut a locked gate, and entered onto Smith's property. [*Id.* at ¶¶ 1, 13]. Plaintiffs further allege that Smith's fiancée woke him up and told him that people were trespassing. [*Id.* at ¶ 15]. In response, Smith threw on some sweat pants, took up a defensive position, and armed himself to defend his fiancée, child, and home. [*Id.* at ¶¶ 15–16].

Plaintiffs allege the Officers were "wholly unidentified and unidentifiable as law enforcement officers" and failed to announce themselves as law enforcement or announce that they had a warrant. [*Id.* at ¶ 17]. Plaintiffs contend that, without

---

[3] "Raymond Smith is the father and next of kin of Rainer Smith, as well as the custodian and guardian of the minor child Rainer Smith Jr. (child of now deceased Rainer Smith)." [Doc. 1-2 at ¶ 2].

knocking, "Defendants entered the home and shot Rainer Smith to death, despite not having an arrest warrant for Rainer Smith, announcing themselves as police officers, or even giving orders to Rainer Smith." [*Id.* at ¶¶ 18, 36]. Plaintiffs also allege Defendants Ford, Wynn, and Farmer admitted to firing their guns at Smith, and Defendants Patterson and Lavender assisted in the entry and killing of Smith. [*Id.* at ¶¶ 19–20].

Plaintiffs filed their Complaint on July 5th, 2019, in the Superior Court of Peach County, in which they claim to have complied with ante litem notice requirements for their claims. *See* [*id.* at ¶ 11]. After Plaintiffs filed their Complaint, Defendants filed their Answer [Doc. 1-10] and removed the case to this Court on August 5, 2019. *See generally* [Doc. 1-9]. That same day, Defendants filed this Motion. Despite the opportunity, Plaintiffs never responded to Defendants' Motion.

## DISCUSSION

### A.    Standard of Review

When ruling on a 12(b)(6) motion, the Court must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if the plaintiff alleges sufficient factual matter to state a claim for relief that is plausible on its face, and he must state more than "unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). He must also "plead more than labels and conclusions or a formulaic recitation of the elements of a

cause of action," *id.*, such that the factual allegations contained in the complaint are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

When assessing a motion to dismiss for failure to state a claim, the Court employs a two-step framework. *McCullough*, 907 F.3d at 1333. First, the Court identifies and disregards allegations that are "no more than mere conclusions," since "[c]onclusory allegations are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Second, the Court "assume[s] any remaining factual allegations are true and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B.  Plaintiffs' § 1983 Claims Against the Officers

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 against the Officers both in their individual capacities and in their official capacities as members of the City of Byron Police Department. *See* [Doc. 1-2 at ¶¶ 1–4]. "[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent," thus obviating the need to sue local government officials in their official capacity. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). The Plaintiffs named the City of Byron as a defendant in this lawsuit, and asserted § 1983 claims against the City of Byron, as well as against the Officers. *See* [Doc. 1-2 at ¶¶ 33–35]. Therefore, Plaintiffs' § 1983 claims against the Officers—in their official capacities—are duplicative of their § 1983 claims against the City of Byron. Thus, the Court **DISMISSES** Plaintiffs'

§ 1983 claims against the Officers in their official capacities.

### C.     **Plaintiffs' § 1983 Claim Against the City of Byron**

Plaintiffs also assert § 1983 claims against the City of Byron for the actions of its officers. *See* [Doc. 1-2 at ¶¶ 33–35]. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A plaintiff may show a policy by identifying either "(1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through repeated acts of a final policymaker of the [city]." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329–30 (11th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Due to the fact that a city will rarely have an officially-adopted policy that permits a particular constitutional violation, "most plaintiffs . . . must show that the [city] has a custom or practice of permitting it and that the [city's] custom or practice is the 'moving force [behind] the constitutional violation.'" *Grech*, 335 F.3d at 1330 (quoting *City of Canton*, 489 U.S. at 389) (third alteration in original); *see also Monell*, 436 U.S. at 694; *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

Plaintiffs allege that "Defendant City of Byron's orders and training of police officers allowed for and caused [the Officers] to raid Rainer Smith's home in the middle

of the night without announcing their identity, purpose, or authority, leading to the shooting and killing of Rainer Smith." [Doc. 1-2 at ¶ 34]. Further, Plaintiffs state that "Defendants' practice, arising to the level of policy, of supporting other officers' decisions and actions, regardless of their constitutionality or malicious harm to citizens, directly encouraged and caused the unannounced military-style raid on Rainer Smith's home that killed him." [*Id.* at ¶ 35].

These allegations are tenuous at best. Plaintiffs make no *factual* allegations that the City of Byron has an official policy in place that permits the numerous, unspecified constitutional violations allegedly committed by the Officers. As shown by their Complaint, Plaintiffs assert nothing more than unsupported, conclusory allegations that the City of Byron has an unofficial policy of violating its constituents' constitutional rights that "directly encouraged and caused" Smith's death. *See* [*id.*]. Moreover, Plaintiffs' allegations simply do not demonstrate the existence of any supposed policy. Their Complaint does not allege any other incidents of prior unconstitutional misconduct by the City of Byron's officers that were committed according to some purported policy. As explained below, this is not enough.

In *Casado v. Miami-Dade County*, the district court dismissed the plaintiff's § 1983 claims under the *Monell* standard. 340 F. Supp. 3d 1320, 1327 (S.D. Fla. 2018). In that case, the plaintiff attempted to prove that the county "'knew or should have known' that the defendant officers 'had a propensity' for unreasonable and excessive force and

violence'" and did nothing to deter that behavior. *Id.* The district court dismissed the plaintiff's claim, holding that the amended complaint was "devoid of any factual allegations of any prior incidents or the [c]ounty's alleged knowledge and alleged failure to deter the conduct at issue." *Id.* To be clear, the district court went so far as to say "[n]either the Supreme Court nor the Eleventh Circuit has ever imposed municipal liability based on a single incident under *Monell*." *Id.* (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.").[4] To impose liability against a municipality for an unconstitutional practice based on custom, a plaintiff must allege "pattern" and "establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and [well-settled] as to constitute a custom or usage with the force of law.'" *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1320 (S.D. Fla. 2015) (cleaned up) (quoting *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991).

"[C]onclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (citation omitted). Plaintiffs' bare allegations are devoid of any specific facts of other instances of constitutional violations by the City of Byron that

---

[4] *See also Whitaker v. Miami-Dade Cty.*, 126 F.Supp.3d 1313, 1325 (S.D. Fla. 2015) (rejecting "the plaintiffs' legal conclusion that four isolated shootings were enough to constitute a custom or usage in the absence of a written law or express municipal policy").

would allow the Court to consider them as the requisite "pattern," custom, or practice needed to withstand a motion to dismiss. Therefore, because Plaintiffs' allegations fail to state a cognizable *Monell* claim against the City of Byron under § 1983, the Court **DISMISSES** Plaintiffs' § 1983 claim against the City of Byron.

### D.    <u>Plaintiffs' State Law Claims</u>

Defendants allege that Plaintiffs' state law claims for wrongful death and negligence fail as a matter of law for failure to comply with Georgia's ante litem notice statute. Under that statute, a plaintiff must provide timely and proper ante litem notice to the governmental body as a condition precedent to bringing any personal injury claims under state law. *See* O.C.G.A. § 36-33-5.

In *Hoskins v. City of Atlanta*, the court granted summary judgment as to the plaintiff's state law claims due to the plaintiff's "failure to allege either in his Complaint or otherwise that he provided notice to the City as required by the ante litem statute[.]" 2009 WL 10666090, at *10 (N.D. Ga. March 23, 2009). Defendants argue that Plaintiffs failed to "attach any ante litem notices to their Complaint to demonstrate that they complied" with the mandatory ante litem notices. [Doc. 2-1 at p. 8]. However, Defendants did not argue that Plaintiffs did not provide the applicable ante litem notice *at all* before filing suit. *See* [*id.*].

The Court disagrees that it is necessary for Plaintiffs to prove compliance with the ante litem notice statute by attaching the particular ante litem notice to their

Complaint. *See Hajhossein v. City of Statesboro*, No. 609CV048, 2010 WL 538209, at *7 (S.D. Ga. Feb. 12, 2010) (granting plaintiffs leave to amend their complaint to *allege* that ante litem notice was given as to their applicable state claims). In fact, the courts in both *Hoskins* and *Hajhossein* agreed that a plaintiff must only allege or argue that he gave the applicable ante litem notice. *Id.*; *see also Hoskins*, 2009 WL 10666090, at *10 (N.D. Ga. March 23, 2009) (granting summary judgment against plaintiff's state law claims for "failure to allege either in his Complaint or otherwise" that he provided notice).

Here, Plaintiffs unequivocally plead that "[a]ny ante-litem notice requirements have been complied with." [Doc. 1-2 at ¶ 11]. As required by the standard when ruling on a motion to dismiss, the Court accepts Plaintiffs' factual allegations that they complied with the applicable ante litem statute, in this case, O.C.G.A. § 36-33-5. Therefore, Defendants' motion to dismiss Plaintiffs' state law claims against the City of Byron and the Officers in their official capacities is **DENIED**.

### E.   **Plaintiffs' Punitive Damages Claim**

Plaintiffs assert a claim for punitive damages in their Complaint against all Defendants in all capacities. [Doc. 1-2 at ¶¶ 51, 52]. However, several of these claims are meritless. For example, municipalities are immune from punitive damages claims, as are punitive damages against government officials who have been sued in their official capacities. *See, e.g.*, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995) (holding that "*Newport*'s

reasoning applies equally to a Sheriff's Department, thus barring a punitive damage award against Sheriff McDougall in his official capacity."). Accordingly, the Court **DISMISSES** Plaintiffs' punitive damages claims against the City of Byron and the Officers acting in their official capacities. All punitive damages for other claims are permitted to proceed at this stage.

<u>CONCLUSION</u>

To summarize, the Court **GRANTS** Defendants' partial motion to dismiss as to the following: Plaintiffs' conspiracy claims; § 1983 claim against the City of Byron; § 1983 claims against Defendants Ford, Wynn, Farmer, Patterson, and Lavender in their official capacities; and punitive damages claims against the City and the other Defendants in their official capacities. In contrast, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' state-law claims. Accordingly, Plaintiffs' state law wrongful death and negligence claims against the City of Byron and the Officers remain, as well as the § 1983 claims against the Officers in their individual capacities.

**SO ORDERED**, this 6th day of September, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**